ILY McGEE, JR.,

               Plaintiff,

**Hon. Hugh B. Scott**

      v.

**18CV448**

**CONSENT**

COMMISSIONER,

               Defendant.

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (plaintiff), 14 (defendant Commissioner)).   Having considered the Administrative Record, filed as Docket No. 8 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to Supplemental Security Income benefits.   The parties consented to proceed before a Magistrate Judge (see Docket No. 16).

## PROCEDURAL BACKGROUND

The plaintiff ("Ily McGee, Jr." or "plaintiff") filed an application for disability insurance benefits on June 18, 2014 [R. 17].   That application was denied initially.   The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated April 12, 2017, that the plaintiff was not disabled within the meaning

of the Social Security Act [R. 15]. The ALJ's decision became the final decision of the Commissioner on February 16, 2018 [R. 1], when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on April 13, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 11, 14), and plaintiff duly replied (Docket No. 15). Upon further consideration, this Court then determined that the motions could be decided on the papers.

## FACTUAL BACKGROUND

Plaintiff, a 30-year-old as of the original onset date of December 22, 2011, with a limited education (up to the tenth grade [R. 47]), last worked as a barber [R. 23]. He contends that he was disabled as of the onset date of December 22, 2011, but later amended that date to July 15, 2014, when he last engaged in substantial gainful activity [R. 15, 17]. This date also was amended because plaintiff said that he had begun mental health treatment for his anxiety in July 2014 [R. 40] (Docket No. 11, Pl. Memo. at 14).

Plaintiff claims the following impairments deemed severe by the ALJ—back impairment, knee impairment [R. 17]—but the ALJ found the following impairments were not severe: neck impairment; anxiety, depression, and post-traumatic stress disorder ("PTSD") [R 18]. The ALJ found that the record was absent of evidence of associated complications, periods of exacerbation, or treatment that exceeded conservative measures for the ailments deemed not to be severe [R. 18].

## MEDICAL AND VOCATIONAL EVIDENCE

One issue is how the ALJ considered the opinion of treating physician Dr. Samad Khan. The ALJ misidentified the doctor as "Dr. Somid Khan" who reported plaintiff's employability in August 2014 [R. 21, 335-36]. On August 16, 2014, Dr. Khan examined plaintiff for his employability and opined that, due to plaintiff's patellofemoral syndrome, plaintiff was unable to work because he could not be mobile for long periods of time and could not ambulate well [R. 335-36]. The doctor found that plaintiff was very limited in walking, standing, lifting, carrying, pushing, pulling, bending, and climbing stairs or other climbing, and was moderately limited in sitting [R. 336]. The ALJ, however, assigned little weight to the doctor's assessment because the rest of the medical record did not support that assessment [R. 21].

The ALJ then noted Dr. Samad Khan's November 3, 2014, letter stating plaintiff's condition [R. 21, 347]. Dr. Khan stated that plaintiff was disabled for foreseeable future following an MRI showing disk pathology with clinical symptoms [R. 347]. The ALJ also found this assessment to be too vague [R. 21]. The record, however, does not contain this MRI report; the medical record does have an MRI reported taken August 29, 2014 [R. 337], days after Dr. Kahn's assessment [R. 335].

The medical record includes two appointments with Dr. Khan on October and December 2014 [R. 451-60]. The ALJ cites these records to conclude that plaintiff was not in acute distress (see Docket No. 14, Def. Memo. at 13, 4). In a February 2017 MRI of plaintiff's lumbar spine revealed unchanged moderate central L4-L5 disc herniation, small central L5-S1 disc herniation, mild L3-L4 and L4-5 spinal stenosis, and bilateral L4-L5 and L5-S1 neural foramen stenosis [R. 434, 21] (see Docket No. 14, Def. Memo. at 6).

3

Another issue is plaintiff's mental impairments. He claims anxiety, depression and PTSD. Plaintiff testified that he could not return to work due to pain in his lower back, PTSD, and anxiety [R. 56], complaining of always being in pain [R. 57] (Docket No. 11, Pl. Memo. at 15). Plaintiff used a prescribed cane [R. 58] (Docket No. 11, Pl. Memo. at 16). He said that he could stand for about 20 minutes at a time, walk for 5 minutes, could not fully bend, could not stoop or crouch without pain, but he was able to lift his 18-pound two-year-old daughter once or twice [R. 59-60] (see Docket No. 11, Pl. Memo. at 16). Plaintiff rarely drove, he stayed at home with his two-year-old daughter while his wife worked [R. 46-47] (Docket No. 11, Pl. Memo. at 15), with a cousin helping to provide childcare [R. 60] (Docket No. 11, Pl. Memo. at 16). Plaintiff did not complete his GED because of a drowning incident on the anniversary of his mother's death; plaintiff became afraid to do anything, be around people, or attend school [R. 48] (Docket No. 11, Pl. Memo. at 15). He last performed temporary work in 2016 for a week and a half before termination because his back bothered him [R. 48-49] (Docket No. 11, Pl. Memo. at 15).

The ALJ found that plaintiff had a residual functional capacity to perform light work, except plaintiff can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; squat or kneel. Plaintiff is limited to unskilled work, defined as simple routine tasks. [R. 20.]

The ALJ found that plaintiff was unable to perform past relevant work as a barber [R. 23]. With this capacity and the inability to perform plaintiff's past work, the vocational expert opined that a hypothetical claimant like plaintiff was able to perform such light exertional, unskilled occupations as housekeeper cleaner, mail clerk, and parking lot attendant [R. 24]. As a result, the ALJ held that plaintiff was not disabled [R. 24-25].

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence.   See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).   Substantial evidence is defined as "'more than a mere scintilla.   It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

A.     General Standards and the Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment.   Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).   Once this burden has been met, "the burden shifts to the

[Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the

performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

B.      Treating Physician Rule for pre-March 2017 Claim

This application was filed on June 2014, thus the treating physician rule as of March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927 (2017), applies. The current version of the SSA regulations eliminates the treating physician's rule, but for applications filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c (see also Docket No. 14, Def. Memo. at 15). E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claim filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

<u>Taillon v. Comm'r</u>, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

C.    Step Two Standards

As for impairments consideration at Step Two, plaintiff bears the burden of establishing that he or she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work,'" <u>Miller v. Berryhill</u>, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017) (Telesca, J.); <u>see</u> 20 C.F.R. § 404.1520(c).   An impairment or combination of impairments found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985).   In this Circuit, this Step Two severity analysis "may do no more than screen out <u>de minimis</u> claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir. 1995).   Despite this level of screening at Step Two, plaintiff still has the burden to show that her impairments or combination of impairments significantly limited her ability to perform work.   At Step Three, plaintiff has the burden of showing that her impairments meet or exceed impairments listed in Social Security regulations.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage.   Plaintiff first complains that the ALJ erred in finding that his mental impairments were not severe at Step Two and failed to incorporate his mental condition in his residual functional capacity or in subsequent steps of the analysis (Docket No. 11, Pl. Memo. at 17-22).   Plaintiff then argues that the ALJ improperly discounted

the opinion of treating physician Dr. Khan [R. 335] (Docket No. 11, Pl. Memo. at 23-28), contending that the ALJ should have sought further information from the doctor (id. at 23).

I.      Consideration of Mental Impairments

Plaintiff faults the ALJ in giving significant weight to consultants' assessments and the opinion of Dr. Khan is assessing his mental impairments (Docket No. 11, Pl. Memo. at 18).   He points to outpatient mental health treatments he sought in 2014, 2015, and 2016 that the ALJ did not consider in determining the severity of his mental impairments (see id. at 12-13; [R. 320-33, 410-32, 374-77, 378-81]).   Plaintiff was discharged in 2015 and 2016 for attendance issues (id. at 13; [R. 374, 376, 381]).   Plaintiff argues that Dr. Khan's assessment [R. 334-36] was only for his physical condition (id. at 20-21), although plaintiff later argues that this opinion was devalued by the ALJ (id. at 23-28).

Defendant responds that the ALJ reasonably assessed plaintiff's mental impairment and his limitations were accounted for in the eventual residual functional capacity analysis (Docket No. 14, Def. Memo. at 10-12) [see R. 19].   Defendant contends that plaintiff merely argues that the evidence should have been weighed differently (Docket No. 14, Def. Memo. at 11).

Plaintiff has not borne his burden as to the severity of his mental impairments for Step Two, despite the de minimis threshold for alleging a severe impairment.   Further, the residual functional capacity found plaintiff could perform only unskilled work, defined as routine tasks [R. 20], factoring in plaintiff's non-severe impairments (see Docket No. 14, Def. Memo. at 10).   Although properly deemed non-severe, the residual functional capacity considered plaintiff's mental impairments by limiting him to unskilled work.   Plaintiff's motion for judgment on this ground is **denied**.

II.     Consideration of Treating Physician, Dr. Khan's, Opinion

On plaintiff's physical impairments, the ALJ gave little weight to Dr. Khan's opinion [R. 25], again despite adopting Dr. Khan's findings as to plaintiff's mental impairment [R. 21].

The ALJ conceded that the record reflects that plaintiff had a history of back and knee impairment [R. 20, citing R. 357-61, 383, 408, 439-563], including plaintiff's participation in physical therapy [R. 20, 358-61].   The ALJ noted that plaintiff used a cane and walked with a limp favoring his right leg, but the ALJ concluded from the record that plaintiff had excellent strength in his lower extremities [R. 21, 371].   In his reply, plaintiff argues that the ALJ failed to give good reason for discounting Dr. Khan's physical condition opinion (Docket No. 15, Pl. Reply Memo. at 5-6).   Defendant agrees with the ALJ in discounting Dr. Khan's opinion [R. 335, 347] because it was made on a standardized (non-agency) form (Docket No. 14, Def. Memo. at 13, citing, e.g., Klodzinski v. Astrue, 274 F. App'x 72, 73 (2d Cir. 2008) (slip opinion); Halloran v. Barnhart, 362 F.3d 28, 31 n.2 (2d Cir. 2004)).   In both cited cases, the Second Circuit criticized the use of New York State Office of Temporary and Disability Assistance form for indicating degree of limitation in sitting that the court found was "only marginally useful," Halloran, supra, 362 F.3d at 31 n.2; see Klodzinski, supra, 274 F. App'x at 73.   The opinion here is different and those cases are thus distinguishable.

The record, as noted (above) by the ALJ, supports Dr. Khan's disability assessment, only differing in the severity.   Here, Dr. Khan reported on a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form [R. 335] as well as a separate to whom it may concern note [R. 347] indicating plaintiff's physical

functioning limitations, there finding plaintiff was "very limited" in walking, standing, lifting, carrying, pushing, pulling, bending and climbing stairs [R. 336].

Instead, the ALJ gave little weight to Dr. Khan's August 2014 opinion because it did not show plaintiff to be as limited as Dr. Khan concluded [R. 21]. The ALJ reached this finding by mere disagreement with the severity of plaintiff's limitations based upon the medical record [R. 20-21]. The ALJ based this upon a single report from Dr. Douglas Moreland in October 2016 for a neurosurgical consultation for Dr. Andrew Warner [R. 20-21, 371, 370]. There, Dr. Moreland found that plaintiff used a cane and walked with a limp but it was inconsistent and noted that he had "excellent strength in both lower extremities and symmetrical muscle mass" [R. 371] and noted his surprise that for a young and healthy man "one slip and fall has caused him this much disability over the last five years" [R. 371]. This is despite Dr. Moreland's diagnosis of low back pain, radiculopathy, lumbar region, and other intervertebral disc degeneration, lumbar region [R. 371] (see Docket No. 11, Pl. Memo. at 12). It appears the ALJ relied upon this 2016 medical opinion and gave little weight to Dr. Khan's treating opinion.

Both sides have argued that Dr. Khan's opinion should be discounted on one aspect but accepted in full for another. Plaintiff cannot claim Dr. Khan's 2014 opinion should have been considered for one context (his physical condition) but not for another context (his mental condition). Similarly, the ALJ cannot selectively accept the doctor's mental assessment and reject a treating physician's physical condition opinion from the same part of the record to fit a conclusion as to disability.

Plaintiff finally argues that the ALJ had a statutory duty to contact Dr. Khan (Docket

No. 15, Pl. Reply Memo. at 5-6).   He cites to 42 U.S.C. § 423(d)(5)(B) which in relevant part

provides

> "In making any determination the Commissioner of Social Security shall make
> every reasonable effort to obtain from the individual's treating physician (or other
> treating health care provider) all medical evidence, including diagnostic test,
> necessary in order to properly make such determination, prior to evaluating
> medical evidence obtained from any other source on a consultative basis."

He also relies upon Judge Vilardo's decision in Szefler v. Berryhill, No. 16CV774 (Docket

No. 16, Order at 13-14), 2018 U.S. Dist. LEXIS 217390, at *16-17, 2018 WL 683115, at *6-7

(W.D.N.Y. Dec. 28, 2018) (Vilardo, J.), and treating physician rule (Docket No. 15, Pl. Reply

Memo. at 5-6).   Defendant cites to the regulations for the treating physician rule, 20 C.F.R.

§§ 416.912(b), 416.920b(c), contending that the ALJ no longer had a duty to recontact treating

sources (Docket No. 14, Def. Memo. at 15).

The issue thus is the degree of severity of plaintiff's impairment as found by Dr. Khan.

If there is any question about his opinion (or to penetrate beyond the scope of the non-agency

form answers) this doctor **should be contacted to develop further the medical record**.   Given

the ambiguity in the consideration of Dr. Khan's opinion, reevaluation including contacting the

doctor again is in order.   The effective date of changed regulation is March 27, 2017, 82 Fed.

Reg. 5844, 5874, 5884 (Jan. 18, 2017), after the onset or amended onset dates in this case.   This

case is under old treating physician rule, better decided on appropriate weighing of physician's

opinion, which included the duty to recontact that physician to complete the record.   Even if

contacting again Dr. Khan is optional under the current version of the regulations, as defendant

argues (cf. Docket No. 14, Def. Memo. at 15-16), such a contact is appropriate here.

Plaintiff's motion (Docket No. 11) for judgment on this ground is **granted**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 11) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 14) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of the Court shall close this case.

So Ordered.


                                                          s/Hugh B. Scott
                                    _____
                                               Hon. Hugh B. Scott
                                         United States Magistrate Judge

Buffalo, New York
July 31, 2019